Bonita P. Martinez, Esq., SBN 153346
2918 Fifth Avenue Suire 204
San Diego, CA 92103
619-291-8166
Fax# 619-291-8167

Attorney for Plaintiff,
Delia V. Opinion

FILED

08 MAY 28 PM 4:31

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY



IN THE UNITED STATES DISTRICT COURT

'08 CV 0944 BEN NLS

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| Delia V. Opinion,<br><br>          PLAINTIFF,<br><br>     VS.<br><br>United States Navy & Marine Corps; Susan  Ottobre, Bonita David, Mark Burhart; Jack Flanagan; Michael Thomas, Ruben Quinonez, Remy Songco , Zenaida Kaspick, Sandberg & Sikorski, Marifi Szumonski, Ligaya Davis and Does  1 through 10,Inclusive,<br><br>          DEFENDANTS. | )CASE NO.: \|<br>)COMPLAINT FOR DISCRIMINATION IN<br>)EMPLOYMENT:<br>)1. AGE DISCRIMINATION<br>)2. NATIONAL ORIGIN<br>)DISCRIMINATION<br>)3. DEFAMATION continuing<br>)4.FRAUD continuing:INTENTIONAL<br>)MISREPRESENTATION/CONCEALMENT<br>)5.CONSPIRACY WITH INTENT TO<br>)DEFRAUD<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I
INTRODUCTORY ALLEGATIONS

1.   This is a complaint by a former employee against her ex-employer for damages arising out of an unlawful suspension from her employment for an alleged fraud; discrimination based on age and national origin. Plaintiff  seeks compensatory damages. This Court has jurisdiction under Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. Section 621 et seq. (ADEA);

1  The ADEA prohibits employment discrimination against 40 years of

2  age or older, section 623 (1); Title

3  VII of the Civil Rights Act of 1964, as amended by the Civil

4  Rights Act of 1991, 42 U.S.C. §§2000e, et seq. (Title VII), and

5  42  U.S.C.§§ 1981, et seq; Section 703 (a)(1) of the Civil

6  Rights Act of 1964, 42 U.S.C. 2000e-3(a)(1) and the Federal

7  Torts Claims Act   Title 28 U.S.C.§267(a)Plaintiff, Delia V.

8  Opinion, filed  an Administrative Claim with Equal Employment

9  Opportunity Commission on or about February 1, 2006. This case

10  has been under an intensive investigation and cooperative

11  discovery with the EEOC no decision was rendered.

12  2.   Defendant Navy/Marine Corps( Agency) is an Agency of the

13  United States Government.

14  3.   Plaintiff, Delia V. OPINION, hereinafter referred to as

15  (Plaintiff) was a federal employee worked as an Operations

16  Assistant for the Marine Corps Community Services(MCX/MCCS)

17  aboard Marine Corps Air Station (MCASD) Miramar, San Diego,

18  California. On or about December 20, 2005 she was suspended from

19  her employment indefinitely, and coerced to retire by fear and

20  intimidation of being charged with fraud; unlawfully accused of

21  misconduct (fraudulently making an unauthorized purchase of a

22  diamond ring). The unlawful accusations, and coercion of

23  retirement/resignation  was approved and promoted by upper

24  management defendants, in addition to Sales Associates Marifi

25  Szumonski(Ms.Szumonski) and  Ligaya Davis(Ms. Davis).

26  4.   At all relevant times herein, Plaintiff, age 53 at that

27  time,  was a resident of the State of California and was

1  employed by the United States Navy and Marine Corps as a an

2  Operations Assistant for the MCX/MCCS.

3  5.   Defendant Marifi Szumowski (Ms. Szumonski) was a senior

4  Sales Associate for MCX/MCCS, age 36. Defendant, Ms. Davis, age

5  40 hereinafter Ms. Davis was an employee of the MCX/MCCS, and

6  was the Sales Associate who sold Plaintiff a diamond cluster

7  ring on consignment with MXC. At all times herein mentioned Ms.

8  Szumonski and Ms. Davis were residents in the county of San

9  Diego, California.

10  6.   Defendant, Bonnie David (Ms. David) was the MCX/MCCS Human

11  Resource Director; was residents in the County of San Diego,

12  California. At all times herein mentioned Ms. David was a

13  resident in the County of San Diego, California.

14  7.   On December 19, 2005, Archara Bowen, drafted the Notice of

15  suspension; and was present during the questioning of the Sales

16  Associate, Ligaya Davis.   Ms. Bowen was a Human Resource

17  Specialist, told Plaintiff that she should retire and work

18  somewhere else. At all times herein mentioned, Ms. Bowen was a

19  resident in the County of San Diego, California.

20  8.   Defendant Susan Ottobre at all times herein mentioned Ms.

21  Ottobre was a resident in the County of San Diego, California.

22  9.   Glo Emde and Terry White continued to process Plaintiff

23  retirement papers, even though she had called to request that

24  she wanted to withdraw her papers.

25  10. Glo Emde (Ms. Emde) was a MCX/MCCS Human Resource Director.

26  On December 22, 2005 Plaintiff talked with Ms. Emde because she

27  had been told to talk to her by Ms. Bowen regarding the

1  retirement which Ms. Bowen had suggested. Plaintiff talked to
2  Ms. Emde and Ms. Emde told her to do what Ms. Bowen had
3  suggested, that is, retire.

4  12. Defendant Jack Flanagan (Mr. Flanagan) was the MCX/MCCS
5  Operations Director, signed the Notice of Suspension. At all
6  times herein mentioned, Mr. Flanagan was a resident in the
7  County of San Diego, California.

8  13. Defendant Michael Thomas (Mr. Thomas), was the Loss
9  Prevention Director for the MCX/MCCS. Mr. Thomas, who had been
10 extremely rude and hostile to Plaintiff grabbed paperwork out of
11 her hands, without asking for it during an interview. Mr. Thomas
12 had stated to Plaintiff she was suspended indefinitely and sent
13 Plaintiff home escorted by Glo Emde, Mr. Quinonez and Mr.
14 Thomas. Mr Thomas fabricated, falsified and participated in the
15 conspiracy to obtain false statements and allegations from
16 witnesses. At all times herein mentioned Mr. Thomas was a
17 resident in the County of San Diego, California.

18 14. Defendant Mark Burhart was the Retail Store Director, On
19

20 December 21, 2005, When Plaintiff called Mr. Burhart he refused
21 to speak to her, because he said he did not have the report and
22 the investigation was ongoing. At all times herein mentioned Ms.
23 Mr. Burhart was a resident in the County of San Diego,
24 California.

25 15. Defendant Remy Songco (Ms. Songco) was the MCX/MCCS retail
26 Operations Manager, age 50, was the supervisor of Plaintiff. At
27 all times herein mentioned, all of these Defendants were
28 employees of the MCX/MCCS. At all times herein mentioned Ms.

1  Songco was a resident in the County of San Diego, California.

2  16. Defendant Sandberg & Sikorski(S&S), whose business entity

3  is unknown was doing business and was licensed to do business

4  as a vendor of jewelry at the MCX/MCCS in the County of San

5  Diego.

6  17. Defendant Zenaida Kaspick is a vendor representative for

7  S&S, a fine jewelry concessionaire that operates within the

8  Exchange. Ms. Kaspick, employee for (S&S), managed the business

9  operations in the sale of S&S jewelry at the MCX/MCCS. At all

10  times herein mentioned Ms. Kaspick was a resident in the County

11  of San Diego, California.

12  18. Ms. Theresa Hanrahan (Hanrahan, deceased) managed the

13  Jewelry Department. She (Hanrahan) and Ms. Kaspick provided

14  false information to Marine Corps investigators and Marine Corps

15  personnel and stated that a diamond solitaire ring valued at

16  $2,399.99 was fraudulently purchased by Plaintiff for 60% off

17  the regular price. Hanrahan purchased a diamond ring on the same

18  day and was given 60% off the regular price, prior to her death.

19  19. Plaintiff is informed and believes that all Defendants were

20  acting within the course and scope of their employment with

21  MCX/MCCS, Marine Corps of the United States Government.

22  20. The true names and capacities of the Defendants named

23  herein as Does 1 through 10, inclusive, whether individual,

24  corporate, associate, or otherwise are unknown to Plaintiff who

25  therefore sues such Defendants by fictitious names under

26  California Code of Civil Procedure § 474. Plaintiff is informed

27  and believes that Doe Defendants are California residents.

28

Plaintiff will amend this Complaint to show such true names and capacities when they have been determined. Each Defendant was an agent of the other Defendants and ratified the conduct of the other Defendants.

21. Plaintiff appealed the suspension in a timely manner, but the appeal was never acknowledged. Plaintiff discussed the nonresponse with the EEO Counselor and the EEOC Counselor received the appeal in writing.

22. On January 17, 2006 Plaintiff called Terry White of the Corporate Human Resource office in Virginia to withdraw her retirement papers because she felt that it was wrong to be forced to retire against her will. Plaintiff explained to Ms. White she wanted to cancel the retirement. Ms. White said that the paper work was not yet received nor processed. She advised Delia to work with local Human Resource Department. Glo Emde and Bonita David to cancel her retirement. Plaintiff folloed the advice of ms. White. However, Defendants would not approve to withdraw her retirement.

## II
### FIRST CAUSE OF ACTION
#### Discrimination/AGE:

23. The allegations of paragraph 1-22 are re-alleged and incorporated herein by reference. This cause of action is pleaded against all Defendants.

24. Plaintiff was at all material times an employee for

MCX/MCCS for more than twenty nine years, and was protected under the California Fair Employment and Housing Act (FEHA); California Government Codes; in particular, Govt C §12941, prohibiting age discrimination and Govt C §12940, prohibiting National Origin discrimination in employment as well as the Age Discrimination in Employment Act of 1967(ADEA). At all times herein mentioned, all Government codes aforementioned were in full force and effect and was binding on Defendants.

25. On December 20 2005, Plaintiff was age 53, and was unlawfully placed on emergency suspension indefinitely by Michael Thomas. Loss prevention completed the investigation and concluded fraud against the Plaintiff. Shortly thereafter Plaintiff was told to retire by Ms. Bowen, Ms. Emde and approved by Bonita David.

26. At the time that Plaintiff was placed under suspension and subsequently coerced to retire, she had been rated "exceptionally reliable and trustworthy"; her work was wholly satisfactory; and she was rated competent, and diligent in her performance to the profit of Defendants. Plaintiff was subjected to forced retirement by fear and intimidation of being accused of misconduct and complete loss of retirement benefits.

27. Defendants concocted a conspiracy to accuse Plaintiff of fraud for making an unauthorized purchase of a diamond solitaire ring and was subjected to less favorable treatment because she,

over the age of 40. Defendants claim that Plaintiff was placed on suspension indefinitely due to fraud, an alleged unauthorized purchase of a diamond solitaire , when the ring she purchased was not diamond solitaire. Defendants'claim that Plaintiff was placed on suspension indefinitely  due to fraud,  was a pretext designed  to  conceal  Defendants  'practice  of  discriminating against Plaintiff on the basis of her age and National Origin. Defendants had demonstrated a pattern of terminating employees in certain groups, over 40.

28. Mr. Burhart approved the resignation/ retirement for the Plaintiff.

29. Plaintiff believes and thereon alleges that her age was a factor in the Agency's decision to place her under suspension and coerce her  to retire under intimidation, coercion and fear. Agency placed plaintiff on suspension indefinitely following false allegations of misconduct of fraud.

30.  Agency's Human Resource employees, Ms. Bowen and Ms. Emde, told Plaintiff to retire and subsequently refused to allow Plaintiff to withdraw her retirement request more than three weeks after the effective date of Plaintiff's resignation, even though the Plaintiff's papers had not yet been processed nor submitted to the corporate office in Virginia.  Plaintiff was treated less favorably than others similarly situated.  Such discrimination was in violation of California Govt C 12941 and

the ADEA and resulted in damage and injury to Plaintiff. Plaintiff did not make an unauthorized purchase and committed no fraud. Plaintiff purchased a ring which had been advertised with a 60% discount and she did not buy a diamond solitaire.

31. Plaintiff had seen the ring in question advertised in a MCX/MCCS flyer and asked Ms. Davis if she could purchase the ring, which had a tag on it, that it was on sale for 60% off. The ring which Plaintiff purchased had been advertised in a flyer and did not look like other diamond solitaires advertised in the MCX/MCCS flyer. The investigation was initiated because of information provided to MCX/MCCS management by Ms. Kaspick, a vendor from S&S Jewelry.

32. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits; incurred losses in seeking and performing substitute employment and losses she would have received had Defendants not taken such adverse employment actions against her.

33. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer embarrassment, anxiety, humiliation, and emotional distress, all to her damage in amount according to proof.

34. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful

intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff thus is entitled to recover punitive damages from Defendants in an amount according to proof.

35. As a result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by United States and California Government Code.

36. WHEREFORE, Plaintiff requests relief as hereinafter provided.

III

SECOND CAUSE OF ACTION

DISCRIMINATION/ NATIONAL ORIGIN

37. The allegations or paragraphs 1 to 36 are re-alleged and incorporated by reference. This cause of action is pleaded against all Defendants.

38. Plaintiff is Filipino. Some employees who were similarly situated have been investigated and allowed to remain employed during the investigation. There has been a pattern of humiliating, intimidating, chastisement and accusatory actions by Loss prevention personnel toward Filipino employees over forty. Mr. Thomas has subjected other similarly situated Filipinos, who have been questioned on an alleged misconduct, to humiliation, intimidation, chastisement and false accusations. Defendants sought to find reasons for getting Plaintiff to

resign and or retire because she was older and Filipino. The reasons given by Defendants for Plaintiff's indefinitely suspension were pretext. Defendants failed to take reasonable steps to prevent the discrimination against Plaintiff from occurring, and to take immediate and appropriate corrective action to remedy the discrimination as described herein.

39. Agency has failed to follow their disciplinary procedure against Plaintiff such as issuing a formal warning, providing counseling, or imposing probation, or suspension.

40. WHEREFORE, Plaintiff requests relief as hereinafter provided.

IV
THIRD CAUSE OF ACTION
[Defamation]

41. The allegations of paragraph 1-40 are re-alleged and incorporated herein by reference. This cause of action is pleaded against all Defendants.

42. By the acts described herein, Defendants caused to be published false and unprivileged communications tending directly to injure Plaintiff in her business and professional reputation.

43. On or about December 20, 2005 and continuing Plaintiff was indefinitely suspended and coerced to retire; defendants intentionally stated to persons in the company, as well as outside the company that Plaintiff had engaged in conduct which adversely reflected on her trade occupation. Defendants specifically communicated that Plaintiff had made an unauthorized purchase of a diamond ring as follows:

a. Ms. Szumonski stated to Mr. Quinonez of Loss prevention that

Plaintiff had approached her a few days before December 13, 2005 and asked whether the S&S ring would be 60% off. Ms. Szumonski made a false statement to Loss Prevention when she said," the morning of the sale she told Plaintiff that the ring was not included under the 60% discount sale."

b.    Ms. Szumonski and Ms. Davis falsely stated, among others, in particular to Mr. Ruben Quinonez and Michelle Albrecht, other management personnel and Loss prevention personnel that the ring in question was not included in the 60% sale.

c.    Ms. Davis falsely stated that she sold the ring to Plaintiff  because Plaintiff had said, "Remy Songco said the ring was included in 60% discount." Plaintiff had requested to buy the ring, advertised in a MCX/MCCS flyer with a 60% discount from the Sales Associate Ms. Davis. Plaintiff did not tell anyone that Ms. Songco had said the diamond was not included in the 60% discount sale. Ms. Davis and Ms. Kaspick, and Ms. Szumonski made false statements to management and other employees that that Plaintiff said to Ms. Davis that," Ms. Songco had approved the 60% sale price of the ring."

d.    Ms. Davis signed a false statement prepared by Loss Prevention (Mr. Quinonez) that Plaintiff had said Remy Songco had approved the 60% discount, knowing that this was something the MCX/MCCS Retail managers did not do and were not authorized to do. Ms. Davis has stated that after the initial interview Mr. Quinonez to sign a written statement outlining what was discussed. "I was not comfortable signing anything until after I

Complaint for Discrimination -                    12

received counsel from my attorney. After speaking with my attorney I returned and agreed to sign the statement.

e.  Ms. Davis falsely stated to Mr. Quinonez on December 19, 2005 that she had told the Plaintiff she was not sure the S&S ring was on sale, but that after the Plaintiff, "told her she asked Remy and Remy said it was included." Ms. Davis falsely stated to Ms. Hanrahan she was intimidated by the Plaintiff into selling the S&S ring at the authorized 60% discount.

f.  Ms. Davis stated in her deposition that S&S pretags all their jewelry and that when they're in the showcase, they have tags and that is the correct sale price for that day. Ms. Davis stated, among others, that the management or manager of S&S would decide which item is going to be placed on the brochure; and that Remy Songco did not have authority to give a certain discount to S&S jewelry pieces. Ms. Davis stated that each piece of jewelry that is being sold by S&S was always tagged with the correct price and that the price was there on the ring. Ms. Davis knew the price (60% discount was on the ring.

g.  On December 14, 2005 Ms. Ottobre forwarded Ms. Hanrahan's email to the MCX/MCCS Human Resources Office adding that she told Plaintiff the ring was not included in the sale.

h.  Ms. Kaspick stated to management and other personnel that Plaintiff had made an unauthorized purchase of the diamond ring, when she knew full well that the diamond ring was tagged at a 60% discount. Ms. Kaspick further falsely reported to management that Ms. Szumonski, the jewelry supervisor, had previously told Plaintiff that the ring would not be included in the 60% sale.

i.    Mr. Thomas, Mr. Flanagan and Mr. Quinonez conspired among themselves to obtain false allegation from witnesses.

j.    Ms. Songco falsely stated to management and to Human Resources that she had told Plaintiff that the diamond ring was not included in the 60% sale.

k.    On December 13, 2007 Ms. Hanrahan sent her supervisor, Suzanne Ottobre an email reporting false information provided to her by Zenaida Kaspick.

44.    Plaintiff is further informed and believes that at the time of her suspension and coerced resignation/retirement, managers intentionally told Human Resources that Plaintiff had engaged in misconduct and made false statements an unauthorized statements in the purchase of a diamond ring. This information implied that Plaintiff was  a liar, an incompetent and an untrustworthy employee.

45.    The information provided to Human Resources and others was false, and management and sales Associates knew it to be false at  the time they were made. In fact, Plaintiff had not engaged in misconduct and was at all material times a competent and trustworthy employee.

46.    Plaintiff is informed and believes that at all times herein Agency management ratified and republished the above-described statements with knowledge that they were false.

47.    The defamatory statements set forth above in paragraph 43, were ratified and republished to other employees and others to force Plaintiff to  resign and/or retire and to obtain the favor

of management. Defendants published these statements with malice express and implied malice with the design and intent to injure Plaintiff in her good name, reputation and employment.

48. As a proximate result of the defamatory statements made by all defendants have caused Plaintiff has suffered injury to her business and professional reputation, and further has suffered and continues to suffer embarrassment, humiliation, and anguish all to her damage in an amount according to proof.

49. Defendants committed the acts alleged herein maliciously, fraudulently, oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendants and each of them in an amount according to proof.

50. WHEREFORE. Plaintiff prays for damages as hereinafter provided.

V

FOURTH CAUSE OF ACTION CAUSE OF ACTION

[FRAUD: Concealment and Intentional Misrepresentation]

51. Plaintiff reallege and incorporate herein Paragraphs 1-50 as though fully set forth herein.

52. On or about December 20, 2005 and continuing, Defendants, and each of them, concealed and suppressed material facts which should have been disclosed when Defendants told management that Plaintiff had made an unauthorized purchase of a diamond ring.

53.   On or about December, 2005 and continuing all Defendants prevented Plaintiff from discovering the concealed or suppressed facts that the diamond ring was included in the 60% sale. Management failed to disclose information with respect to the fact that the diamond ring in question had been pre-tagged with a discount of 60% and placed in the showcase by S&S and Ms. Kaspick. Also the ring in question is not a diamond solitaire but rather it was a cluster ring.

54.   Defendants and each of them concealed or suppressed these facts with the intent to defraud and induce Plaintiff to resign and or retire and to obtain favor from the Agency management. At the time that Plaintiff acted, Plaintiff was unaware of these concealed or suppressed facts and would not have taken the action if Plaintiff had known the facts.

55.   On or about December 20, 2005 and continuing Managers made false statements and or facilitated the transfer of false statements and lies, among others, as follows:

a.   Ms. Szumonski stated to Mr. Quinonez of Loss prevention that Plaintiff had approached her a few days before December 13, 2005 and asked whether the S&S ring would be 60% off. Ms. Szumonski made a false statement to Loss Prevention when she said," the morning of the sale she told Plaintiff that the ring was not included under the 60% discount sale."

b.   Ms. Szumonski and Ms. Davis falsely stated, among others, in particular to Mr. Ruben Quinonez and Michelle Albrecht, other management personnel and Loss prevention personnel that the ring in questioned was not included in the 60% sale.

c.   Ms. Davis falsely stated that she sold the ring to

Plaintiff  because Plaintiff had said, "Remy Songco said the ring was included in 60% discount." Plaintiff had requested to buy the ring, advertised in a MCX/MCCS flyer with a 60% discount from the Sales Associate Ms. Davis. Plaintiff did not tell anyone that Ms. Songco had said the diamond was not included in the 60% discount sale. Ms. Davis and Ms. Kaspick, and Ms. Szumonski made false statements to management and other employees that that Plaintiff said to Ms. Davis that," Ms. Songco had approved the 60% sale price of the ring."

d.   Ms. Davis signed a false statement prepared by Loss Prevention (Mr. Quinonez) that Plaintiff had said Remy Songco had approved the 60% discount, knowing that this was something the MCX/MCCS Retail managers did not do and were not authorized to do. Ms. Davis has stated that after the initial interview Mr. Quinonez to sign a written statement outlining what was discussed. "I was not comfortable signing anything until after I received counsel from my attorney. After speaking with my attorney I returned and agreed to sign the statement.

e.   Ms. Davis falsely stated to Mr. Quinonez on December 19, 2005 that she had told the Plaintiff she was not sure the S&S ring was on sale, but that after the Plaintiff, "told her she asked Remy and Remy said it was included." Ms. Davis falsely stated to Ms. Hanrahan she was intimidated by the Plaintiff into selling the S&S ring at the authorized 60% discount.

f.   Ms. Davis stated in her deposition that S&S pretags all their jewelry and that when they're in the showcase, they have

tags and that is the correct sale price for that day. Ms. Davis stated, among others, that the management or manager of S&S would decide which item is going to be placed on the brochure; and that Remy Songco did not have authority to give a certain discount to S&S jewelry pieces. Ms. Davis stated that each piece of jewelry that is being sold by S&S was always tagged with the correct price and that the price was there on the ring. Ms. Davis knew the price (60% discount was on the ring.

g.   On December 14, 2005 Ms. Ottobre forwarded Ms. Hanrahan's email to the MCX/MCCS Human Resources Office adding that she told Plaintiff the ring was not included in the sale.

h.   Ms. Kaspick stated to management and other personnel that Plaintiff had made an unauthorized purchase of the diamond ring, when she knew full well that the diamond ring was tagged at a 60% discount. Ms. Kaspick further falsely reported to management that Ms. Szumonski, the jewelry supervisor, had previously told Plaintiff that the ring would not be included in the 60% sale.

i.   Mr. Thomas, Mr. Flanagan and Mr. Quinonez conspired among themselves to obtain false allegation from witnesses.

j.   Ms. Songco falsely stated to management and to Human Resources that she had told Plaintiff that the diamond ring was not included in the 60% sale.

k.   On December 13, 2007 Ms. Hanrahan sent her supervisor, Suzanne Ottobre an email reporting false information provided to her by Zenaida Kaspick.

56. The Statements made by the Defendants as stated, supra in paragraphs (55 a-k) were in fact untrue. The true facts were as follows:

On December 13, 2005, Plaintiff purchased a diamond cluster ring advertised in the MCX/MCCS flyer, displayed in the showcase and pre-tagged by S&S/Ms. Kaspick at 60% discount from Ms. Davis during her lunch hour. When she (Plaintiff) returned from lunch her supervisor, ms. Remy Songco called her in her office and asked her what she had purchased and she told her and showed her the jewelry. Shortly thereafter, Ms. Hanrahan and Ms. Kaspick came into the room and told her that the ring was not on sale at 60% off. When Plaintiff heard this she (Plaintiff) returned the ring immediately. The following Monday, Plaintiff was called and was escorted by Ruben Quinonez to Mr. Thomas office in another building. There she was grilled, questioned, intimidated, harassed, forced to admit that she defrauded the store. Mr. Thomas banging on the desk forcefully in front on Glo Emde and Mr. Quinonez. The mistreatment continued for more than three hours. When Plaintiff refused to admit to the fraud, Mr. Thomas told her that she was suspended indefinitely without pay and was escorted out of the building and military base like she was a dangerous criminal.

57. Defendants had misrepresented or concealed that certain facts herein as described in the paragraphs 55 and others above with the malicious intention of depriving Plaintiff of her money and property, thereby justifying an award of punitive damages.

WHEREFORE Plaintiff prays for damages as hereinafter provided.

VI
## FIFTH CAUSE OF ACTION
[CONSPIRACY WITH INTENT DEFRAUD]

58.  Plaintiffs reallege and incorporate herein Paragraphs 1-58. as though fully set forth herein.

59.  As alleged above, on or about December 19, 2005, and continuing to the present time, Defendants agreed and knowingly conspired between themselves to defraud Plaintiff.

Under this conspiracy, Defendants agreed to have Plaintiff falsely accuse the Plaintiff of purchasing a diamond solitaire ring in an unauthorized manner, by concocting false allegations and procuring false statements from witnesses. Defendants further agreed to coerce Plaintiff to resign and retire by placing her in fear and intimidation of being accused of a crime.

60.  Defendants did the acts and made the statements as herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above.

61.  At all times Defendants knew Plaintiffs had purchased a ring lawfully and that it had been advertised in the MCX/MCCS flyer at a 60% discount. Defendants knew that Plaintiff had not made certain alleged false statements in the purchase of the ring.

62.  As a result of the conspiracy between the defendants Plaintiff has been suffered injured to her reputation, embarrassment, humiliation, financial an emotional stress.

63.  WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1.    For compensatory damages

2.    For general damages according to proof at trial;

3.    For special damages according to proof at trial;

4.    For exemplary or punitive damages for the Fraud Conspiracy to Defraud and defamation.

5.    For cost of suit herein incurred.

## VII

## PRAYER FOR RELIEF

64.   WHEREFORE, Plaintiff request relief as follows:

(1). For special and economic damages, including back pay and front pay, for all cause of action;

(2). For general damages and non-economic damages;

(3). For punitive damages according to proof ;

(4). For an award of interest, including prejudgment interest at the prevailing legal rate;

(5). For cost of the suit, including reasonable attorney fees required by statutes;

(6). For mental and emotional distress damages;

(7). For compensatory damages, including lost wages, lost employee benefits, bonuses, vacation benefits, and other special and general damages according to proof; and

(8). For such other and further relief as the Court may deem proper.

Date__ 5/16/08 __

LAW OFFICE OF BONITA P. MARTINEZ

BY: _Bonita P. Martinez_

Bonita P. Martinez, Esq.
Attorney for Plaintiff,
Delia V. Opinion

## JURY DEMAND

Plaintiff demands trial by jury in this action.

Complaint for Discrimination -                    21

# CIVIL COVER SHEET

JS 44 (Rev 12/07)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Delia V. Opinion

**DEFENDANTS**
United States Navy & Marine Corps; Susan Ottobre, Bonita David, Mark Burhart, Jack Flanagan, Michael Thomas, Ruben Quinonez, Remy Songco, Zenalda Kaspick, Sandberg & Sikorski, Marili Szumonski, Ligaya Davis and Does 1 through 10, Inclusive,

**(b)** County of Residence of First Listed Plaintiff San Diego, California
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Bonita P. Martinez, Esq., SBN 153346 (619)291-8166
2918 Fifth Avenue Suite 204
San Diego, California 92103

Attorneys (If Known)

'08 CV 0944 BEN NLS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ]1 | [ ]1 | Incorporated or Principal Place of Business In This State | [ ]4 | [ ]4 |
| Citizen of Another State | [ ]2 | [ ]2 | Incorporated and Principal Place of Business In Another State | [ ]5 | [ ]5 |
| Citizen or Subject of a Foreign Country | [ ]3 | [ ]3 | Foreign Nation | [ ]6 | [ ]6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

TORTS
PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury - Med. Malpractice
- [ ] 365 Personal Injury - Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

CIVIL RIGHTS
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus - Alien Detainee
- [ ] 465 Other Immigration Actions

BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Age Discrimination in Employment Act of 1967
Brief description of cause.
Age and National Origin discrimination arising out of an unlawful suspension and coerced retirement.

**VII. REQUESTED IN COMPLAINT:**
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $400,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 5/28/08
SIGNATURE OF ATTORNEY OF RECORD Bonita P. Martinez

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT $350 APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com

To:619 685 4220    P.3/6    MAY-28-2008 08:37 From:

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 151329    — MB**

**May 28, 2008
16:29:14**

**Civ Fil Non-Pris**
USAO #.: 08CV0944
Judge..: ROGER T BENITEZ
Amount.:                    $350.00 CK
Check#.: BC916

**Total—> $350.00**

FROM: DELIA V OPINION VS US NAVY &
      MARINE CORPS, ET AL