1  BONITA P. MARTINEZ, ESQ., SBN 153346
   2918 FIFTH AVENUE SUIRE 204
2  SAN DIEGO, CA 92103
   619-291-8166
3  FAX# 619-291-8167

4  ATTORNEY FOR PLAINTIFF,
   DELIA V. OPINION

FILED

2008 JUL 22  AM 10: 11

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DELIA V. OPINION,

          PLAINTIFF,

      VS.

DONALD C. WINTER, SECRETARY OF
THE NAVY; UNITED STATES NAVY &
MARINE CORPS; SUSAN OTTOBRE,
BONITA DAVID, MARK BURHART;
JACK FLANAGAN; MICHAEL THOMAS,
RUBEN QUINONEZ, REMY SONGCO ,
ZENAIDA KASPICK, SANDBERG &
SIKORSKI, MARIFI SZUMONSKI,
LIGAYA DAVIS AND DOES   1
THROUGH 10,INCLUSIVE,

          DEFENDANTS.

)CASE NO.:08 cv 0944 BEN NLS
)FIRST AMENDED COMPLAINT FOR
)DISCRIMINATION IN EMPLOYMENT:
)1. AGE DISCRIMINATION
)2. NATIONAL ORIGIN
)DISCRIMINATION
)3. DEFAMATION CONTINUING
)4.FRAUD CONTINUING: INTENTIONAL
)MISREPRESENTATION/CONCEALMENT
)5.CONSPIRACY WITH INTENT TO
)DEFRAUD
)
)
)
)
)
)
)
)
)
)
)
)

I
INTRODUCTORY ALLEGATIONS

1.  This is a complaint by a former employee against her ex-
employer for damages arising out of an unlawful suspension from
her employment for an alleged fraud; discrimination based on age
and national origin. Plaintiff seeks compensatory damages. This
Court has jurisdiction under Age Discrimination in Employment
Act of 1967, as amended 29 U.S.C. Section 621 <u>et seq</u>. (ADEA);

The ADEA prohibits employment discrimination against 40 years of age or older, section 623 (1); Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§2000e, et seq. (Title VII), and 42 U.S.C.§§ 1981, et seq; Section 703 (a)(1) of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3(a)(1) and the Federal Torts Claims Act Title 28 U.S.C.§267(a)Plaintiff, Delia V. Opinion, filed an Administrative Claim with Equal Employment Opportunity Commission on or about February 1, 2006. This case has been under an intensive investigation and cooperative discovery with the EEOC no decision was rendered.

2.    Defendant Donald C. Winters, is Secretary of Navy, and Defendant Navy/Marine Corps( Agency) is an Agency of the United States Government respectively.

3.    Plaintiff, Delia V. OPINION, hereinafter referred to as (Plaintiff) was a federal employee worked as an Operations Assistant for the Marine Corps Community Services(MCX/MCCS) aboard Marine Corps Air Station (MCASD) Miramar, San Diego, California. On or about December 20, 2005 she was suspended from her employment indefinitely, and coerced to retire by fear and intimidation of being charged with fraud; unlawfully accused of misconduct (fraudulently making an unauthorized purchase of a diamond ring). The unlawful accusations, and coercion of retirement/resignation  was approved and promoted by upper management defendants, in addition to Sales Associates Marifi Szumonski(Ms.Szumonski) and  Ligaya Davis(Ms. Davis).

4.    At all relevant times herein, Plaintiff, age 53 at that

time, was a resident of the State of California and was employed by the United States Navy and Marine Corps as a an Operations Assistant for the MCX/MCCS.

5. Defendant Marifi Szumowski (Ms. Szumonski) was a senior Sales Associate for MCX/MCCS, age 36. Defendant, Ms. Davis, age 40 hereinafter Ms. Davis was an employee of the MCX/MCCS, and was the Sales Associate who sold Plaintiff a diamond cluster ring on consignment with MXC. At all times herein mentioned Ms. Szumonski and Ms. Davis were residents in the county of San Diego, California.

6. Defendant, Bonnie David (Ms. David) was the MCX/MCCS Human Resource Director; was residents in the County of San Diego, California. At all times herein mentioned Ms. David was a resident in the County of San Diego, California.

7. On December 19, 2005, Archara Bowen, drafted the Notice of suspension; and was present during the questioning of the Sales Associate, Ligaya Davis. Ms. Bowen was a Human Resource Specialist, told Plaintiff that she should retire and work somewhere else. At all times herein mentioned, Ms. Bowen was a resident in the County of San Diego, California.

8. Defendant Susan Ottobre at all times herein mentioned Ms. Ottobre was a resident in the County of San Diego, California.

9. Glo Emde and Terry White continued to process Plaintiff retirement papers, even though she had called to request that she wanted to withdraw her papers.

10. Glo Emde (Ms. Emde) was a MCX/MCCS Human Resource Director. On December 22, 2005 Plaintiff talked with Ms. Emde because she

Complaint for Discrimination -                    3

1  had been told to talk to her by Ms. Bowen regarding the
2  retirement which Ms. Bowen had suggested. Plaintiff talked to
3  Ms. Emde and Ms. Emde told her to do what Ms. Bowen had
4  suggested, that is, retire.

5  12. Defendant Jack Flanagan (Mr. Flanagan) was the MCX/MCCS
6  Operations Director, signed the Notice of Suspension. At all
7  times herein mentioned, Mr. Flanagan was a resident in the
8  County of San Diego, California.

9  13. Defendant Michael Thomas (Mr. Thomas), was the Loss
10 Prevention Director for the MCX/MCCS. Mr. Thomas, who had been
11 extremely rude and hostile to Plaintiff grabbed paperwork out of
12 her hands, without asking for it during an interview. Mr. Thomas
13 had stated to Plaintiff she was suspended indefinitely and sent
14 Plaintiff home escorted by Glo Emde, Mr. Quinonez and Mr.
15 Thomas. Mr Thomas fabricated, falsified and participated in the
16 conspiracy to obtain false statements and allegations from
17 witnesses. At all times herein mentioned Mr. Thomas was a
18 resident in the County of San Diego, California.

19
20 14. Defendant Mark Burhart was the Retail Store Director, On
21 December 21, 2005, When Plaintiff called Mr. Burhart he refused
22 to speak to her, because he said he did not have the report and
23 the investigation was ongoing. At all times herein mentioned Ms.
24 Mr. Burhart was a resident in the County of San Diego,
25 California.

26 15. Defendant Remy Songco (Ms. Songco) was the MCX/MCCS retail
27 Operations Manager, age 50, was the supervisor of Plaintiff. At
28 all times herein mentioned, all of these Defendants were

Complaint for Discrimination -                                    4

1  employees of the MCX/MCCS. At all times herein mentioned, Ms.

2  Songco was a resident in the County of San Diego, California.

3  16.  Defendant Sandberg & Sikorski(S&S), whose business entity

4  is unknown was doing business and was licensed to do  business

5  as a vendor of jewelry at the MCX/MCCS in the County of San

6  Diego.

7  17.  Defendant Zenaida Kaspick is a vendor representative for

8  S&S, a fine jewelry concessionaire that operates within the

9  Exchange. Ms. Kaspick, employee for (S&S), managed the business

10  operations in the sale of S&S jewelry at the MCX/MCCS. At all

11  times herein mentioned Ms. Kaspick was a resident in the County

12  of San Diego, California.

13  18.  Ms. Theresa Hanrahan (Hanrahan, deceased) managed the

14  Jewelry Department. She (Hanrahan) and Ms. Kaspick provided

15  false information to Marine Corps investigators and Marine Corps

16  personnel and stated that a diamond solitaire ring valued at

17  $2,399.99 was fraudulently purchased by Plaintiff for 60% off

18  the regular price. Hanrahan purchased a diamond ring on the same

19  day and was given 60% off the regular price, prior to her death.

20  19.  Plaintiff is informed and believes that all Defendants were

21  acting within the course and scope of their employment with

22  MCX/MCCS, Marine Corps of the United States Government.

23  20.  The true names and capacities of the Defendants named

24  herein as Does 1 through 10, inclusive, whether individual,

25  corporate, associate, or otherwise are unknown to Plaintiff who

26  therefore sues such Defendants by fictitious names under

27  California Code of Civil Procedure § 474. Plaintiff is informed

28

Complaint for Discrimination -                          5

and believes that Doe Defendants are California residents. Plaintiff will amend this Complaint to show such true names and capacities when they have been determined. Each Defendant was an agent of the other Defendants and ratified the conduct of the other Defendants.

21. Plaintiff appealed the suspension in a timely manner, but the appeal was never acknowledged. Plaintiff discussed the nonresponse with the EEO Counselor and the EEOC Counselor received the appeal in writing.

22. On January 17, 2006 Plaintiff called Terry White of the Corporate Human Resource office in Virginia to withdraw her retirement papers because she felt that it was wrong to be forced to retire against her will. Plaintiff explained to Ms. White she wanted to cancel the retirement. Ms. White said that the paper work was not yet received nor processed. She advised Delia to work with local Human Resource Department. Glo Emde and Bonita David to cancel her retirement. Plaintiff folloed the advice of ms. White. However, Defendants would not approve to withdraw her retirement.

## II
### FIRST CAUSE OF ACTION
#### Discrimination/AGE:

23. The allegations of paragraph 1-22 are re-alleged and incorporated herein by reference. This cause of action is pleaded against all Defendants.

24. Plaintiff was at all material times an employee for

Complaint for Discrimination -                              6

MCX/MCCS for more than twenty nine years, and was protected under the California Fair Employment and Housing Act (FEHA); California Government Codes; in particular, Govt C §12941, prohibiting age discrimination and Govt C §12940, prohibiting National Origin discrimination in employment as well as the Age Discrimination in Employment Act of 1967(ADEA). At all times herein mentioned, all Government codes aforementioned were in full force and effect and was binding on Defendants.

25. On December 20 2005, Plaintiff was age 53, and was unlawfully placed on emergency suspension indefinitely by Michael Thomas. Loss prevention completed the investigation and concluded fraud against the Plaintiff. Shortly thereafter Plaintiff was told to retire by Ms. Bowen, Ms. Emde and approved by Bonita David.

26. At the time that Plaintiff was placed under suspension and subsequently coerced to retire, she had been rated "exceptionally reliable and trustworthy"; her work was wholly satisfactory; and she was rated competent, and diligent in her performance to the profit of Defendants. Plaintiff was subjected to forced retirement by fear and intimidation of being accused of misconduct and complete loss of retirement benefits.

27. Defendants concocted a conspiracy to accuse Plaintiff of fraud for making an unauthorized purchase of a diamond solitaire ring and was subjected to less favorable treatment because she,

1   over the age of 40. Defendants claim that Plaintiff was placed

2   on suspension indefinitely due to fraud, an alleged unauthorized

3   purchase of a diamond solitaire , when the ring she purchased

4   was not diamond solitaire. Defendants'claim that Plaintiff was

5   placed on suspension indefinitely  due to fraud,  was a pretext

6

7   designed  to  conceal  Defendants 'practice  of  discriminating

8   against Plaintiff on the basis of her age and National Origin.

9   Defendants had demonstrated a pattern of terminating employees

10  in certain groups, over 40.

11

12  28. Mr. Burhart approved the resignation/ retirement for the

13  Plaintiff.

14  29. Plaintiff believes and thereon alleges that her age was a

15  factor in the Agency's decision to place her under suspension

16

17  and coerce her  to retire under intimidation, coercion and fear.

18  Agency placed plaintiff on suspension indefinitely following

19  false allegations of misconduct of fraud.

20  30.  Agency's Human Resource employees, Ms. Bowen and Ms. Emde,

21  told Plaintiff to  retire and subsequently refused to allow

22

23  Plaintiff to withdraw her retirement request more than three

24  weeks after the effective date of Plaintiff's resignation, even

25  though the Plaintiff's papers had not yet been processed nor

26  submitted to the corporate office in Virginia.  Plaintiff was

27  treated less favorably than others similarly situated.  Such

28  discrimination was in violation of California Govt C 12941 and

the ADEA and resulted in damage and injury to Plaintiff. Plaintiff did not make an unauthorized purchase and committed no fraud. Plaintiff purchased a ring which had been advertised with a 60% discount and she did not buy a diamond solitaire.

31. Plaintiff had seen the ring in question advertised in a MCX/MCCS flyer and asked Ms. Davis if she could purchase the ring, which had a tag on it, that it was on sale for 60% off. The ring which Plaintiff purchased had been advertised in a flyer and did not look like other diamond solitaires advertised in the MCX/MCCS flyer. The investigation was initiated because of information provided to MCX/MCCS management by Ms. Kaspick, a vendor from S&S Jewelry.

32. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits; incurred losses in seeking and performing substitute employment and losses she would have received had Defendants not taken such adverse employment actions against her.

33. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer embarrassment, anxiety, humiliation, and emotional distress, all to her damage in amount according to proof.

34. Defendants committed the acts alleged herein maliciously. fraudulently, and oppressively, in bad faith, with the wrongful

intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff thus is entitled to recover punitive damages from Defendants in an amount according to proof.

35. As a result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by United States and California Government Code.

36. WHEREFORE, Plaintiff requests relief as hereinafter provided.

### III

### SECOND CAUSE OF ACTION

### DISCRIMINATION/ NATIONAL ORIGIN

37. The allegations or paragraphs 1 to 36 are re-alleged and incorporated by reference. This cause of action is pleaded against all Defendants.

38. Plaintiff is Filipino. Some employees who were similarly situated have been investigated and allowed to remain employed during the investigation. There has been a pattern of humiliating, intimidating, chastisement and accusatory actions by Loss prevention personnel toward Filipino employees over forty. Mr. Thomas has subjected other similarly situated Filipinos, who have been questioned on an alleged misconduct, to humiliation, intimidation, chastisement and false accusations. Defendants sought to find reasons for getting Plaintiff to

1   resign and or retire because she was older and Filipino. The

2   reasons given by Defendants for Plaintiff's indefinitely

3   suspension were pretext. Defendants failed to take reasonable

4   steps to prevent the discrimination against Plaintiff from

5   occurring, and to take immediate and appropriate corrective

6   action to remedy the discrimination as described herein.

7   39. Agency has failed to follow their disciplinary procedure

8   against Plaintiff such as issuing a formal warning, providing

9   counseling, or imposing probation, or suspension.

10  40. WHEREFORE, Plaintiff requests relief as hereinafter

11  provided.

                              IV
13                  THIRD CAUSE OF ACTION
                       [Defamation]
14  41. The allegations of paragraph 1-40 are re-alleged and

15  incorporated herein by reference. This cause of action is pleaded

16  against all Defendants.

17  42. By the acts described herein, Defendants caused to be

18  published false and unprivileged communications tending directly

19  to injure Plaintiff in her business and professional reputation.

20  43. On or about December 20, 2005 and continuing Plaintiff was

21  indefinitely suspended and coerced to retire; defendants

22  intentionally stated to persons in the company, as well as

23  outside the company that Plaintiff had engaged in conduct which

24  adversely reflected on her trade occupation. Defendants

25  specifically communicated that Plaintiff had made an

26  unauthorized purchase of a diamond ring as follows:

27  a. Ms. Szumonski stated to Mr. Quinonez of Loss prevention that

28

                  Complaint for Discrimination -                    11

Plaintiff had approached her a few days before December 13, 2005 and asked whether the S&S ring would be 60% off. Ms. Szumonski made a false statement to Loss Prevention when she said," the morning of the sale she told Plaintiff that the ring was not included under the 60% discount sale."

b.   Ms. Szumonski and Ms. Davis falsely stated, among others, in particular to Mr. Ruben Quinonez and Michelle Albrecht, other management personnel and Loss prevention personnel that the ring in question was not included in the 60% sale.

c.   Ms. Davis falsely stated that she sold the ring to Plaintiff  because Plaintiff had said, "Remy Songco said the ring was included in 60% discount." Plaintiff had requested to buy the ring, advertised in a MCX/MCCS flyer with a 60% discount from the Sales Associate Ms. Davis. Plaintiff did not tell anyone that Ms. Songco had said the diamond was not included in the 60% discount sale. Ms. Davis and Ms. Kaspick, and Ms. Szumonski made false statements to management and other employees that that Plaintiff said to Ms. Davis that," Ms. Songco had approved the 60% sale price of the ring."

d.   Ms. Davis signed a false statement prepared by Loss Prevention (Mr. Quinonez) that Plaintiff had said Remy Songco had approved the 60% discount, knowing that this was something the MCX/MCCS Retail managers did not do and were not authorized to do. Ms. Davis has stated that after the initial interview Mr. Quinonez to sign a written statement outlining what was discussed. "I was not comfortable signing anything until after I

Complaint for Discrimination -                                    12

1  received counsel from my attorney. After speaking with my

2  attorney I returned and agreed to sign the statement.

3  e.  Ms. Davis falsely stated to Mr. Quinonez on December 19,

4  2005 that she had told the Plaintiff she was not sure the S&S

5  ring was on sale, but that after the Plaintiff, "told her she

6  asked Remy and Remy said it was included." Ms. Davis falsely

7  stated to Ms. Hanrahan she was intimidated by the Plaintiff into

8  selling the S&S ring at the authorized 60% discount.

9  f.  Ms. Davis stated in her deposition that S&S pretags all

10  their jewelry and that when they're in the showcase, they have

11  tags and that is the correct sale price for that day. Ms. Davis

12  stated, among others, that the management or manager of S&S

13  would decide which item is going to be placed on the brochure;

14  and that Remy Songco did not have authority to give a certain

15  discount to S&S jewelry pieces. Ms. Davis stated that each piece

16  of jewelry that is being sold by S&S was always tagged with the

17  correct price and that the price was there on the ring. Ms.

18  Davis knew the price (60% discount was on the ring.

19  g.  On December 14, 2005 Ms. Ottobre forwarded Ms. Hanrahan's

20  email to the MCX/MCCS Human Resources Office adding that she

21  told Plaintiff the ring was not included in the sale.

22  h.  Ms. Kaspick stated to management and other personnel that

23  Plaintiff had made an unauthorized purchase of the diamond ring,

24  when she knew full well that the diamond ring was tagged at a

25  60% discount. Ms. Kaspick further falsely reported to management

26  that Ms. Szumonski, the jewelry supervisor, had previously told

27  Plaintiff that the ring would not be included in the 60% sale.

28

Complaint for Discrimination -                                    13

i.   Mr. Thomas, Mr. Flanagan and Mr. Quinonez conspired among themselves to obtain false allegation from witnesses.

j.   Ms. Songco falsely stated to management and to Human Resources that she had told Plaintiff that the diamond ring was not included in the 60% sale.

k.   On December 13, 2007 Ms. Hanrahan sent her supervisor, Suzanne Ottobre an email reporting false information provided to her by Zenaida Kaspick.

44.   Plaintiff is further informed and believes that at the time of her suspension and coerced resignation/retirement, managers intentionally told Human Resources that Plaintiff had engaged in misconduct and made false statements an unauthorized statements in the purchase of a diamond ring. This information implied that Plaintiff was a liar, an incompetent and an untrustworthy employee.

45.   The information provided to Human Resources and others was false, and management and sales Associates knew it to be false at the time they were made. In fact, Plaintiff had not engaged in misconduct and was at all material times a competent and trustworthy employee.

46.   Plaintiff is informed and believes that at all times herein Agency management ratified and republished the above-described statements with knowledge that they were false.

47.   The defamatory statements set forth above in paragraph 43, were ratified and republished to other employees and others to force Plaintiff to resign and/or retire and to obtain the favor

Complaint for Discrimination -                                    14

of management. Defendants published these statements with malice express and implied malice with the design and intent to injure Plaintiff in her good name, reputation and employment.

48. As a proximate result of the defamatory statements made by all defendants have caused Plaintiff has suffered injury to her business and professional reputation, and further has suffered and continues to suffer embarrassment, humiliation, and anguish all to her damage in an amount according to proof.

49. Defendants committed the acts alleged herein maliciously, fraudulently, oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendants and each of them in an amount according to proof.

50. WHEREFORE. Plaintiff prays for damages as hereinafter provided.

V

FOURTH CAUSE OF ACTION CAUSE OF ACTION

[FRAUD: Concealment and Intentional Misrepresentation]

51. Plaintiff reallege and incorporate herein Paragraphs 1-50 as though fully set forth herein.

52. On or about December 20, 2005 and continuing, Defendants, and each of them, concealed and suppressed material facts which should have been disclosed when Defendants told management that Plaintiff had made an unauthorized purchase of a diamond ring.

53.  On or about December, 2005 and continuing all Defendants prevented Plaintiff from discovering the concealed or suppressed facts that the diamond ring was included in the 60% sale. Management failed to disclose information with respect to the fact that the diamond ring in question had been pre-tagged with a discount of 60% and placed in the showcase by S&S and Ms. Kaspick. Also the ring in question is not a diamond solitaire but rather it was a cluster ring.

54.  Defendants and each of them concealed or suppressed these facts with the intent to defraud and induce Plaintiff to resign and or retire and to obtain favor from the Agency management. At the time that Plaintiff acted, Plaintiff was unaware of these concealed or suppressed facts and would not have taken the action if Plaintiff had known the facts.

55.  On or about December 20, 2005 and continuing Managers made false statements and or facilitated the transfer of false statements and lies, among others, as follows:

a.  Ms. Szumonski stated to Mr. Quinonez of Loss prevention that Plaintiff had approached her a few days before December 13, 2005 and asked whether the S&S ring would be 60% off. Ms. Szumonski made a false statement to Loss Prevention when she said," the morning of the sale she told Plaintiff that the ring was not included under the 60% discount sale."

b.  Ms. Szumonski and Ms. Davis falsely stated, among others, in particular to Mr. Ruben Quinonez and Michelle Albrecht, other management personnel and Loss prevention personnel that the ring in questioned was not included in the 60% sale.

c.  Ms. Davis falsely stated that she sold the ring to

Plaintiff because Plaintiff had said, "Remy Songco said the ring was included in 60% discount." Plaintiff had requested to buy the ring, advertised in a MCX/MCCS flyer with a 60% discount from the Sales Associate Ms. Davis. Plaintiff did not tell anyone that Ms. Songco had said the diamond was not included in the 60% discount sale. Ms. Davis and Ms. Kaspick, and Ms. Szumonski made false statements to management and other employees that that Plaintiff said to Ms. Davis that," Ms. Songco had approved the 60% sale price of the ring."

d.   Ms. Davis signed a false statement prepared by Loss Prevention (Mr. Quinonez) that Plaintiff had said Remy Songco had approved the 60% discount, knowing that this was something the MCX/MCCS Retail managers did not do and were not authorized to do. Ms. Davis has stated that after the initial interview Mr. Quinonez to sign a written statement outlining what was discussed. "I was not comfortable signing anything until after I received counsel from my attorney. After speaking with my attorney I returned and agreed to sign the statement.

e.   Ms. Davis falsely stated to Mr. Quinonez on December 19, 2005 that she had told the Plaintiff she was not sure the S&S ring was on sale, but that after the Plaintiff, "told her she asked Remy and Remy said it was included." Ms. Davis falsely stated to Ms. Hanrahan she was intimidated by the Plaintiff into selling the S&S ring at the authorized 60% discount.

f.   Ms. Davis stated in her deposition that S&S pretags all their jewelry and that when they're in the showcase, they have

Complaint for Discrimination -

1    tags and that is the correct sale price for that day. Ms. Davis

2    stated, among others, that the management or manager of S&S

3    would decide which item is going to be placed on the brochure;

4    and that Remy Songco did not have authority to give a certain

5    discount to S&S jewelry pieces. Ms. Davis stated that each piece

6    of jewelry that is being sold by S&S was always tagged with the

7    correct price and that the price was there on the ring. Ms.

8    Davis knew the price (60% discount was on the ring.

9    g.   On December 14, 2005 Ms. Ottobre forwarded Ms. Hanrahan's

10   email to the MCX/MCCS Human Resources Office adding that she

11   told Plaintiff the ring was not included in the sale.

12   h.   Ms. Kaspick stated to management and other personnel that

13   Plaintiff had made an unauthorized purchase of the diamond ring,

14   when she knew full well that the diamond ring was tagged at a

15   60% discount. Ms. Kaspick further falsely reported to management

16   that Ms. Szumonski, the jewelry supervisor, had previously told

17   Plaintiff that the ring would not be included in the 60% sale.

18   i.   Mr. Thomas, Mr. Flanagan and Mr. Quinonez conspired among

19   themselves to obtain false allegation from witnesses.

20   j.   Ms. Songco falsely stated to management and to Human

21   Resources that she had told Plaintiff that the diamond ring was

22   not included in the 60% sale.

23   k.   On December 13, 2007 Ms. Hanrahan sent her supervisor,

24   Suzanne Ottobre an email reporting false information provided to

25   her by Zenaida Kaspick.

26

27

28

Complaint for Discrimination -                          18

56. The Statements made by the Defendants as stated, supra in paragraphs (55 a-k) were in fact untrue. The true facts were as follows:

On December 13, 2005, Plaintiff purchased a diamond cluster ring advertised in the MCX/MCCS flyer, displayed in the showcase and pre-tagged by S&S/Ms. Kaspick at 60% discount from Ms. Davis during her lunch hour. When she (Plaintiff) returned from lunch her supervisor, ms. Remy Songco called her in her office and asked her what she had purchased and she told her and showed her the jewelry. Shortly thereafter, Ms. Hanrahan and Ms. Kaspick came into the room and told her that the ring was not on sale at 60% off. When Plaintiff heard this she (Plaintiff) returned the ring immediately. The following Monday, Plaintiff was called and was escorted by Ruben Quinonez to Mr. Thomas office in another building. There she was grilled, questioned, intimidated, harassed, forced to admit that she defrauded the store. Mr. Thomas banging on the desk forcefully in front on Glo Emde and Mr. Quinonez. The mistreatment continued for more than three hours. When Plaintiff refused to admit to the fraud, Mr. Thomas told her that she was suspended indefinitely without pay and was escorted out of the building and military base like she was a dangerous criminal.

57. Defendants had misrepresented or concealed that certain facts herein as described in the paragraphs 55 and others above with the malicious intention of depriving Plaintiff of her money and property, thereby justifying an award of punitive damages.

WHEREFORE Plaintiff prays for damages as hereinafter provided.

VI
FIFTH CAUSE OF ACTION
[CONSPIRACY WITH INTENT DEFRAUD]

58. Plaintiffs reallege and incorporate herein Paragraphs 1-58. as though fully set forth herein.

59. As alleged above, on or about December 19, 2005, and continuing to the present time, Defendants agreed and knowingly conspired between themselves to defraud Plaintiff.

Under this conspiracy, Defendants agreed to have Plaintiff falsely accuse the Plaintiff of purchasing a diamond solitaire ring in an unauthorized manner, by concocting false allegations and procuring false statements from witnesses. Defendants further agreed to coerce Plaintiff to resign and retire by placing her in fear and intimidation of being accused of a crime.

60. Defendants did the acts and made the statements as herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above.

61. At all times Defendants knew Plaintiffs had purchased a ring lawfully and that it had been advertised in the MCX/MCCS flyer at a 60% discount. Defendants knew that Plaintiff had not made certain alleged false statements in the purchase of the ring.

62. As a result of the conspiracy between the defendants Plaintiff has been suffered injured to her reputation, embarrassment, humiliation, financial an emotional stress.

63. WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1.    For compensatory damages

2.    For general damages according to proof at trial;

3.    For special damages according to proof at trial;

4.    For exemplary or punitive damages for the Fraud
      Conspiracy to Defraud and defamation.

5.    For cost of suit herein incurred.

                              VII

                      PRAYER FOR RELIEF

64.  WHEREFORE, Plaintiff request relief as follows:

(1). For special and economic damages, including back pay and front pay, for all cause of action;

(2). For general damages and non-economic damages;

(3). For punitive damages according to proof ;

(4). For an award of interest, including prejudgment interest at the prevailing legal rate;

(5). For cost of the suit, including reasonable attorney fees required by statutes;

(6). For mental and emotional distress damages;

(7). For compensatory damages, including lost wages, lost employee benefits, bonuses, vacation benefits, and other special and general damages according to proof; and

(8). For such other and further relief as the Court may deem proper.

Date __7/21/08__

                    LAW OFFICE OF BONITA P. MARTINEZ

                    BY: _Bonita P. Martinez_

                    Bonita P. Martinez, Esq.
                    Attorney for Plaintiff,
                    Delia V. Opinion

                    JURY DEMAND

    Plaintiff demands trial by jury in this action.

Complaint for Discrimination -                    21